NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
:
N.V.E., INC.,                          :
                                       :
            Plaintiff,        :
                                       :       Civil Action No. 07-00004 (JAG)
            v.                :
                                       :       OPINION
A-1 NUTRITION, et al.,                 :
                                       :
            Defendants.       :
_____:

**GREENAWAY, JR., U.S.D.J.**

      This matter comes before this Court on the motion filed by plaintiff, N.V.E., Inc. ("Plaintiff" or "NVE"), seeking entry of default judgment against defendants, Smaragda Apessos, Merill Carlin, Gloria Clarson, Candice Duarte, Alfred Felice, A. Mikonis, Thomas Montagu, Sarah Montagu, Jim Vanorskie, Katherine Vanorskie, Robert Duane Weyandt and Haily Lisa Weyandt,[1] pursuant to FED. R. CIV. P. 55(b). For the reasons set forth below, this motion will be

---

[1] At the outset, this Court notes that Plaintiff has amended its complaint to include only Robert Duane Weyandt, Haily Lisa Weyandt and Ray Travers as defendants. A final judgment and permanent injunction was entered against Ray Travers on December 11, 2007. (Docket No. 35.) Therefore, Robert Duane Weyandt and Haily Lisa Weyandt are the only defendants remaining in this action. They will be referred to as "Defendants" throughout this opinion.

     FED. R. CIV. P. 15(a) governs the procedure for amending a complaint. When amended complaints are filed with the court, the party filing the complaint can include "some or all of the averments of the original pleading." 6 Charles Alan Wright et al., Federal Practice and Procedure § 1476. These averments can be incorporated by reference, pursuant to FED. R. CIV. P. 10(c). Id. Additionally, "the identification of the particular allegations to be incorporated must be direct, clear, and explicit . . . once the original pleading is amended it no longer is part of the action . . .

denied.

## I. Facts

Plaintiff is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 15 Whitehall Road, Andover, New Jersey. (Second Am. Compl. ¶ 3.) Since 1980, Plaintiff has manufactured and sold nutritional and dietary supplement products directly to the public, as well as to distributors and wholesalers nationwide. (Id. ¶ 9.) Plaintiff is well known to users, retailers, and distributors of nutritional and dietary supplements, due to its unique and distinctive logos, labeling, bottling and capsule combinations. (Id.) Since August 14, 1996, Plaintiff has marketed and sold a nutritional supplement using the mark "STACKER 2," which is registered with the United States Patent and Trademark Office. (Id. ¶¶ 10, 11.) Plaintiff has also registered "STACKER 3" with the United States Patent and Trademark Office and has used that trademark in connection with a nutritional supplement

---

." Id. The Third Circuit has held that "[a]n amended complaint supercedes the original version in providing the blueprint for the future course of a lawsuit." Snyder v. Pascack Valley Hosp., 303 F.3d 271, 276 (3d Cir. 2002). See also Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473-74 (2007) ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction.").

  Plaintiff named Robert D. Weyandt a/k/a/ Duane Weyandt ("Robert Weyandt"), Ray Travers and Haily Weyandt a/k/a Lisa Weyandt ("Haily Weyandt") in its Second Amended Complaint. (Second Am. Compl. ¶ 7.) Since the most recent amended complaint controls the course of this case, the only defendants for which default judgment may be sought are the three individuals listed in the Second Amended Complaint. See Snyder, 303 F.3d at 276. Since judgment was entered against Ray Travers, defendants Robert Weyandt and Haily Weyandt are the only two defendants remaining in the action pending before this Court.

  The other defendants named in the motion for default judgment are no longer parties to this case. Even if the remaining defendants were properly included in the Second Amended Complaint, there has been no evidence of minimum contacts or continuous and systematic relationships with New Jersey that would establish personal jurisdiction for any of these defendants.

product since September 1997.  (Id. ¶¶ 11, 13.)  Plaintiff uses a distinct label design, clear bottle, and a distinct capsule in its marketing of the "STACKER 3" product.  (Id. ¶ 13.)  Plaintiff's marks have been extensively promoted through various forms of media, including: television, radio, print and the internet, specifically through the NVE Web site.  (Id. ¶ 15.)  "STACKER 2" and "STACKER 3" marks, packaging, labeling, sales, and promotion have become associated with Plaintiff.  (Id. ¶ 16).

Plaintiff asserts that Defendants knowingly misused NVE's trademarks by marketing and selling dietary and nutritional supplements in direct competition with NVE on the Internet, specifically through the eBay online platform.  (Id. ¶¶ 18, 19.)  eBay is similar to an Internet search engine where users search for particular items for sale from sellers.  (Id. ¶ 21.)  Plaintiff ran various searches of its "STACKER 2" trademark on eBay and found a list of look-a-like products that in some way misused Plaintiff's "STACKER 2" trademark.  (Id. ¶ 22.)  These products were allegedly for sale by Defendants.  (Id.)  Plaintiff states in its complaint that the nutritional and dietary supplements allegedly for sale by Defendants contain the banned Food and Drug Administration product—ephedra.  (Id. ¶ 24.)

Plaintiff alleges that Defendants use the "STACKER 2" trademark on the products for sale on eBay without Plaintiff's authorization, either in the eBay product listing or on the product itself.  (Id. ¶ 25.)  Plaintiff alleges that, based on the eBay listing, Defendants are engaged in the promotion, advertising, importation, distribution, offering for sale and/or sale of look-a-like products bearing counterfeits and/or infringements of Plaintiff's trademarks.  (Id. ¶ 26.)  Plaintiff states that Defendants are not now, and have never been, authorized or entitled to use NVE's trademarks in connection with any business.  (Id. ¶ 30.)  Plaintiff alleges that Defendants' use of

NVE's trademarks in conjunction with their eBay businesses is likely to cause confusion, mistake or deception and that such confusion is likely to occur in New Jersey.  (Id. ¶ 31.)  Plaintiff alleges continuous injury by Defendants' unlawful acts.  (Id. ¶ 32.)

Plaintiff filed a Complaint, a First Amended Complaint, and a Second Amended Complaint.  The Complaint was filed on January 2, 2007.  (Docket No. 1.)  The First Amended Complaint was filed on July 25, 2007.  (Docket No. 9.)  The Second Amended Complaint was filed on October 19, 2007.  (Docket No. 31.)  Plaintiff requested entry of default by the Clerk of the Court on June 20, 2008.  (Docket No. 40.)  The Clerk entered default against Smaragda Apessos, Merill Carlin, Gloria Clarson, Candice Duarte, Alfred Felice, A. Mikonis, Thomas Montagu, Sarah Montagu, Jim Vanorskie, Katherine Vanorskie, Robert Duane Weyandt and Haily Lisa Weyandt on June 25, 2008.[2]  Plaintiff moved for default judgment against Defendants on March 13, 2009.

## II.  STANDARD OF REVIEW

A district court can enter a default judgment, pursuant to FED. R. CIV. P. 55(b)(2), which states:

> In all other cases, the party must apply for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing.  The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when, to enter or effectuate

---

[2] As previously noted, when Plaintiff filed the Second Amended Complaint on October 19, 2007,  Smaragda Apessos, Merill Carlin, Gloria Clarson, Candice Duarte, Alfred Felice, A. Mikonis, Thomas Montagu, Sarah Montagu, Jim Vanorskie and Katherine Vanorskie were terminated as defendants.

4

>     judgment, it needs to:
>         (A) conduct an accounting;
>         (B) determine the amount of damages;
>         (C) establish the truth of any allegation by evidence; or
>         (D) investigate any other matter.

FED. R. CIV. P. 55(b)(2). Further, discretion to enter default judgment is left primarily to the trial court. Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).

"Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." United States v. Gant, 268 F. Supp. 2d 29, 32 (D.D.C. 2003) (citing Brock v. Unique Racquetball & Health Clubs, Inc., 786 F.2d 61, 65 (2d Cir. 1986)). Default does not establish liability for the amount of damages claimed by the plaintiff. Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

The district court has considerable latitude in determining the amount of damages. Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993). In determining the amount, the district court may conduct a hearing. FED. R. CIV. P. 55(b)(2). The court is not required to do so, however, "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). "It is familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount

which the plaintiff is lawfully entitled to recover and to give judgment accordingly." Pope v. United States, 323 U.S. 1, 65 (1944).

### III. JURISDICTION

Before a district court can enter default judgment against a party that has not filed responsive pleadings, the court "has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986).

**A.  Subject Matter Jurisdiction**

Since the case at hand addresses trademark infringement, subject matter jurisdiction exists, pursuant to 15 U.S.C. § 1121.  This Court also has subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338(a), and supplemental jurisdiction over the Plaintiff's common law unfair competition claim; New Jersey trademark dilution and injury to business reputation claims; trafficking in counterfeit marks claim; and unfair competition claim, pursuant to 28 U.S.C. § 1367.

**B.  Personal Jurisdiction**

A federal court first looks to the forum state's long-arm statute to determine if personal jurisdiction is permitted over an out-of-state defendant. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004).  In New Jersey, the long arm statute permits the exercise of personal jurisdiction to the fullest limits of due process, as defined under the Constitution of the United States.  Id.  Therefore, in New Jersey, federal law defines the parameters of a court's in personam jurisdiction.  IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).  Thus, this Court must determine whether the exercise of jurisdiction violates the Due Process Clause of the

Fourteenth Amendment.  Miller Yacht Sales, 384 F.3d at 96.

The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235 (1958)).  It is the burden of the plaintiff to prove that the defendant has purposefully availed itself of the forum state.  Burke v. Quartey, 969 F. Supp. 921, 924 (D.N.J. 1997).

To prove that a defendant has purposefully availed itself of the forum state, a plaintiff may rely upon a defendant's specific contacts with the forum state.  The burden to produce actual evidence of the defendant's contacts with the forum state rests on the plaintiff.  Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).  Personal jurisdiction pursuant to such contacts is known as specific jurisdiction.  Specific jurisdiction is invoked when a claim is related to or arises out of the defendant's contacts with the forum.  Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 416 (1984); Dollar Sav. Bank v. First Sec. Bank of Utah, 746 F.2d 208, 211 (3d Cir. 1984).

A court must first determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  What constitutes minimum contacts varies with the "quality and nature of defendant's activity." Hanson, 357 U.S. at 253.  In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum, and the litigation." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984).  There must be at least "a single deliberate contact"

7

with the forum state that relates to the cause of action.  <u>United States Golf Ass'n v. United States Amateur Golf Ass'n</u>, 690 F. Supp. 317, 320 (D.N.J. 1988).  The unilateral acts of the plaintiff, however, will not amount to minimum contacts.  <u>Helicopteros Nacionales de Colombia</u>, 466 U.S. at 417; <u>Hanson</u>, 357 U.S. at 253.  Assuming minimum contacts have been established, a court must inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  <u>Burger King Co.</u>, 471 U.S. at 476 (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 320 (1945)); <u>see also</u> <u>Pennzoil Prod. Co. v. Colelli & Assoc. Inc.</u>, 149 F.3d 197, 201 (3d Cir. 1998).

For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state.  <u>World-Wide Volkswagen Corp.</u>, 444 U.S. at 292 (1980).  To determine reasonableness, a court considers the following factors: a) the burden on the defendant; b) the forum state's interest in adjudicating the dispute; c) the plaintiff's interest in obtaining convenient and effective relief; d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and e) the shared interest of the several States in furthering substantive social policies.  <u>Id.</u>  Only in "rare cases [do the] minimum requirements inherent in the concept of 'fair play and substantial justice' . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities."  <u>Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County</u>, 480 U.S. 102, 116 (1987) (citing <u>Burger King Co.</u>, 471 U.S. at 462).

If the plaintiff cannot establish specific jurisdiction, a court may exercise general jurisdiction over the defendant if the defendant has maintained "continuous and systematic" contacts with the forum state.  <u>Helicopteros Nacionales de Colombia</u>, 466 U.S. at 416.  To

8

establish general jurisdiction, the plaintiff "must show significantly more than mere minimum contacts" with the forum state.  Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987).  Moreover, the facts required to establish general jurisdiction must be "extensive and persuasive."  Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982) (citing Compagnie des Bauxites de Guinea v. Ins. Co. of North America, 651 F.2d 877, 890 (3d Cir. 1981) (Gibbons, J., dissenting)).

### III. ANALYSIS

In the instant case, this Court lacks personal jurisdiction over Robert Weyandt and Haily Weyandt.  Robert Weyandt was not properly served.[3]  Similarly, Plaintiff has alleged no facts showing that Haily Weyandt has minimum contacts with New Jersey.

"It is an elementary requirement that personal jurisdiction must be established in every case before a court has power to render any judgment."  Lampe v. Xouth, Inc., 952 F.2d 697, 700 (3d Cir. 1992).  A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant.  Id. at 701.  "Indeed, if a defendant is not properly made a party to the action by effective service, he would not be bound by any judgment rendered."  Id.  "A default judgment entered when there has been no proper service of the complaint is, *a fortiori*, void."  Gold Kist, Inc. v. Laurinburg Oil Co., 756 F.2d 14, 19 (3d Cir. 1985).

Service of a summons and complaint in a judicial district of the United States may be effected by "leaving a copy of each at the individual's dwelling or usual place of abode with

---

[3] Even if service was proper, Plaintiff has alleged no facts showing that Robert Weyandt has minimum contacts with New Jersey.

someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B).

In this case, the record reflects that copies of the summons, complaint, and jury demand intended for Robert Weyandt were left with Haily Weyandt, Robert Weyandt's wife at RR2 Box 1198, Claysburg, Pennsylvania 16625. (Docket No. 37.) Robert Weyandt's Return of Service indicates the Claysburg, Pennsylvania address as "defendant's dwelling house or usual place of abode," and that Haily Weyandt is his "Wife." (Docket No. 37.) There is nothing in the record establishing this address as Robert Weyandt's place of residence. To the contrary, the Second Amended Complaint lists Robert Weyandt's address as J&R Sports Nutrition, 415 Orchard Avenue, Suite 1, Altoon,[4] Pennsylvania 16601-9698. (Second Am. Compl. ¶ 7.)

"A consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Comdyne I, Inc. v. Corbin, 908 F.2d 1142 (3d Cir. 1990) (citing 10 Charles Alan Wright, et al., Federal Practice and Procedure § 2688 (2d ed. 1983)). If the address listed in the complaint is taken as true, and nothing in the record reflects any change in Robert Weyandt's residence after the filing of the Second Amended Complaint, then service to the Claysburg, Pennsylvania address is not service to Robert Weyandt's "dwelling house or usual place of abode." Therefore, proper service has not been effected upon Robert Weyandt. However, since Haily Weyandt was served personally, service was effective, as to her.

Service issues aside, Plaintiff has not made any showing regarding contacts by either Robert Weyandt or Haily Weyandt with New Jersey. Plaintiff also has failed to allege facts

---

[4] This Court believes that Plaintiff meant Altoona, Pennsylvania, as there is no city or town by the name of "Altoon" in the state of Pennsylvania.

giving this Court general jurisdiction over Defendants. Plaintiff simply asserts in its Second Amended Complaint that Defendants' alleged use of NVE trademarks is likely to cause confusion in New Jersey. However, there is no explanation to support this conclusory statement. Therefore, Plaintiff has not satisfied its burden to present evidence establishing any basis for personal jurisdiction in this forum over Robert Weyandt or Haily Weyandt.

### IV. CONCLUSION

For the reasons set forth above, this Court finds that, based upon Plaintiff's submissions, Plaintiff has failed to demonstrate that this Court has personal jurisdiction over Robert Weyandt and Haily Weyandt. Plaintiff's motion for default judgment (Docket No. 46) is denied, without prejudice.

Date: November 5, 2009

    S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.